UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DENNIS RUSSELL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:11CV2016 TIA |
| | ) | |
| JEFF NORMAN, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court[1] on the *pro se* petition of Missouri state

prisoner Dennis Russell, for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Petitioner is currently incarcerated at the Southeast Correctional Center located in

Charleston, Missouri pursuant to the sentence and judgment of the Circuit Court of

the City of St. Louis, Missouri.   A jury found Petitioner guilty of the following

offenses: attempted forcible rape for which he was sentenced to ten years

imprisonment; kidnapping for which he was sentenced to ten years imprisonment;

and two counts of domestic assault in the second degree by choking or strangling for

which he was sentenced to ten years and five years, respectively.

---

[1]       The parties consented to the jurisdiction of the undersigned.   *See* Doc. No.
8.

Petitioner was sentenced as a prior persistent offender.   The sentences for forcible rape, kidnapping and the first count of domestic assault run consecutively. The sentence for the second count of domestic assault is to be served concurrently with the sentences for kidnapping and the first domestic assault count offense, but consecutively to the sentence for forcible rape.

Seeking federal habeas relief, Petitioner now raises the following grounds[2] for relief:  (1) that trial counsel was ineffective because she prevented Petitioner from testifying on his own behalf; (2) that trial counsel was ineffective for failing to object to the prosecutor's statements in opening and closing argument that (a) Petitioner ripped or tore off the victim's clothes; (b) improperly consolidated the charge of attempted forcible rape with the charges of domestic assault by asserting that not only attempted forcible rape but also the acts of domestic assault demonstrated forcible compulsion; (3) that trial counsel was ineffective for failing to adequately impeach the roommate of the victim with prior inconsistent statements regarding: (a) how and when Petitioner choked her, (b) how Petitioner took her clothes and when he did so in relation to the time of the attempted rape, and (c) whether S.M. believed

---

2    In his original petition filed before this Court Petitioner raised seven grounds for habeas relief.   (Doc. No.1.)   In his "Traverse and Reply Memorandum" Petitioner waived Grounds 1, 5, 6 and 7.   (Doc. No.28.)

that she would be arrested if she did not testify.   Respondent contends that Ground One fails on the merits and that Grounds Two and Three are procedurally barred.

Upon review of the parties' briefs, the opinions of the reviewing Missouri courts, and the transcripts and exhibits on file and for the reasons set forth below, the Court concludes that Petitioner's request for federal habeas relief be denied.

## I.    Background and Trial

Exhibit A, the trial transcript, reflects the following relevant testimony, evidence and argument during trial.

The victim, S. M., met Petitioner through a friend and at a time when she was having problems with her boyfriend.   S. M and Petitioner dated for approximately four months during which time the relationship became sexual. Thereafter, S.M. and her boyfriend resolved their difficulties and S.M. tried to gradually end her relationship with Petitioner.   On November 10, 2004, at approximately 8:00 p.m., Petitioner picked S.M. up at her home, where she lived with her roommate, C.B.   Petitioner and S.M. went to Petitioner's home where they talked and listened to the radio.   Around 10:00 p.m., S.M. asked Petitioner to take her back home but Petitioner refused.   S.M. then stated that she would call somebody to pick her up, but Petitioner refused to let her use the phone.   S.M.

then tried to leave to catch the bus, but Petitioner grabbed her by the back of her hair, threw her on the bed and began to choke her. S.M. tried to fight back and to remove Petitioner's hands from her neck. While this struggle was taking place, Petitioner told S.M. that she was not going to leave and that she needed to lie down. When S.M. lay down and stopped resisting, Petitioner stopped choking her.

After a period of time, Petitioner started to fall asleep. When S.M saw that Petitioner was asleep, she tried to get up and leave, but her movements awakened Petitioner who threw her back on the bed and resumed choking her. During this second round of choking, whenever S.M. stopped struggling, Petitioner would stop choking her, but if she then tried to get up and leave, Petitioner would begin choking her again. At one point, when S.M. tried to get up, Petitioner removed some of her clothes and left the room with them. Minutes later, Petitioner returned and resumed trying to hold S.M. down. S.M. continued to struggle, Petitioner grabbed her and, knowing that S.M. was afraid of dogs, took her outside where he kept his dog and he held S.M. so that his dog could jump on her. Petitioner then asked S.M. if she would now lie down as he had asked; she agreed to lie down and they went back inside.

Petitioner then got on top of S.M. and tried to insert his penis into her. S.M. said, "No" and tried to move away. Petitioner then told S.M. in effect that she "did not get to tell him no" and continued to try to force S.M. to have sex with him. At some point, Petitioner gave up trying to force S.M. to have sex with him and fell asleep. S.M. then found her clothes, left Petitioner's house, and knocked on the door of the house next door to ask for help. Before anyone could answer, S.M. saw Petitioner emerge from his house and she began to run. Petitioner chased S.M., caught her, and threw her into his car. As Petitioner was getting into the car, S.M. tried to flee, but Petitioner caught her again. Petitioner then held S.M. down as he entered the car and continued to hold her down as he began to drive. As he drove, Petitioner made comments to the effect that he would not have had to do what he had done if S.M. had just done what he told her to do. He also stated that he was going to kill her if she insisted on reporting to the police what he had done. Petitioner drove to S.M.'s home and as S.M. left the car Petitioner again threatened to kill her if she went to the police.

C.B. was awake when S.M. got home and C.B. observed that S.M. was shaken and crying. C.B. testified that she observed scratch marks on S.M.'s neck. S.M. entered C.B.'s room, and asked C.B. to call the police. C.B. did so, and while they waited for the police, S.M. told C.B. what had happened. In particular, S.M. told

C.B. that Petitioner had been "forcing himself" on her, that Petitioner had grabbed her by the neck, held her down, tried to take off her clothes, and that her underwear had been ripped.

Officer Henry Hayden, one of the officers dispatched to S.M.'s home on the night of the incident, noted that on his arrival S.M. was crying and appeared to be frightened.   Officer Hayden did not observe any injuries, but S.M. told Officer Hayden that her neck was sore and that she had been choked.   At Officer Hayden's request, S.M. recounted that she had gone with Petitioner to his house, that Petitioner refused to take her home when she asked and that Petitioner began to choke her when she tried to leave.[3]   Officer Hayden also recalled that S.M. told him that Petitioner had threatened to kill her if she reported the incident to the police. Although S.M. believed that she also mentioned the attempted rape and the incident with the dog in her statement to Officer Hayden, he did not recall these matters.

C.B. testified that over the next several days she observed that S.M. had bruising.   After S.M. made her report to the police, Petitioner called S.M. to complain about the police coming to talk with him.   Petitioner continued to call S.M. for approximately one month thereafter, threatening to kill her if she did not

---

[3]     On direct examination at trial, Officer Hayden recalled S.M. telling him that Petitioner had taken her clothes and left them on a kitchen chair.

drop the charges.   In the telephone calls Petitioner repeatedly stated that he would not have had to do what he did if S.M. had just obeyed him.   Petitioner and S.M. met on one occasion after the incident to discuss what had happened.   Petitioner apologized for what he had done but when S.M. stated that she did not know if she was going to drop the charges, Petitioner again cited S.M.'s failure to obey him as the justification for his actions.

During direct examination at trial, S.M. testified that Petitioner attempted to rape her and tried to choke multiple times.   On cross-examination, Petitioner's counsel asked S.M. whether she had told the police about the attempted rape and that there had been more than one incident of choking.   Petitioner's counsel also asked S.M. whether she had mentioned "attempted rape" at any point prior to her meeting with the prosecuting attorney, six months after she filed the police report.

During C.B.'s direct examination the prosecutor asked her about statements made by S.M. on the night of the rape.   Petitioner's counsel objected that the statements were inadmissible hearsay, but the trial court admitted them as prior consistent statements.   C.B. then testified that the victim told her that Petitioner forced himself on her, grabbing her by the neck, pinning her down, trying to take off her clothes and ripping her undergarments.

On cross examination at trial, S.M. testified that on the evening of the incident she voluntarily accompanied Petitioner to his house and remained there for the first two hours after they arrived. *See* Exh. A. at 170-72.   S.M. also testified on cross examination that she had previously had sex with petitioner and that her other boyfriend did not know about her relationship with Petitioner.   *Id.* at 172.   Trial counsel also established on cross examination that in her statement to the police, S.M. told the police that she had been choked but did not describe separate incidents of choking. *See id.* at 175.   Trial counsel also suggested on cross-examination that S.M. had not told the police bout the dog, but S.M. claimed that she had.   *See id.* at 176.   In addition, in response to a question suggesting that she had not done so, S.M. insisted that she had told the police about the attempted rape.   *See id.* at 176-77.   When asked about where she found her clothes, S.M. denied telling the police that she found the clothes on a chair in the kitchen but acknowledged that during her deposition she testified that she had found the clothes in a cabinet.   *See id*. at 176.   On cross-examination S.M. acknowledged that Petitioner drove her back to her home after the alleged incident and that she did not need medical attention on the day of this incident.   *See id*. at 178-179.   However, S.M. denied trial counsel's suggestion, that S.M. had sex with Petitioner on a several occasions after the incident.   *See id*. at 179.

On cross-examination trial counsel asked Officer Hayden whether S.M. had told him several details that she mentioned in her testimony. *See id.* at 191-92, 194. Officer Hayden stated that S.M. did not tell him anything about an attempted rape, that he did not remember S.M. mentioning anything about a dog and that S.M. had told him that she found her clothes on a chair. *See id.* at 191-92. Officer Hayden also testified that, from what S.M. had told him, he believed that there was only one choking incident during the encounter. *See id.* at 194. Petitioner's counsel also asked Officer Hayden several questions about whether S.M. had reported the attempted rape and whether she had reported the choking as a single, continuous incident or as two separate incidents.

After the close of the State's evidence, Petitioner's counsel rested without presenting evidence or testimony. Immediately thereafter, the judge dismissed the jury for a lunch recess. After the jury had left the courtroom, the judge briefly spoke with Petitioner and inquired whether Petitioner understood that it was his decision whether or not to testify on his own behalf. Petitioner responded that unless he testified "the truth won't prevail" but that he "dreaded" testifying. Exh A at 209. The judge then told Petitioner that if he wanted to testify he needed to so notify the court when they reconvened. *Id.* at 210. The judge then held an instruction conference and took evidence of Petitioner's prior offenses for the

purpose of determining whether he was a persistent offender.   After the instruction

conference concluded, the prosecutor asked whether there would be a hearing on the

issue of Petitioner's decision to testify.   *Id*. at 220.   The judge then said that

because Petitioner had not stated, after the conclusion of the initial discussion on the

issue, that he wanted to testify, the judge would assume the Petitioner did not want to

testify.   *Id*. at 220-21.   Petitioner was present with counsel in the courtroom at this

time and said nothing to his counsel or to the judge.

## II.    Direct Appeal

On direct appeal, Petitioner argued that the trial court abused its discretion by

overruling trial counsel's hearsay objection to C.B.'s testimony with respect to

statements S.M. made to her on the night of the crime.   Petitioner argued that this

testimony was hearsay and failed to fit any exception to the hearsay rule.   Petitioner

further asserted that the testimony constituted improper bolstering because it served

only to repeat S.M.'s version of the events.

On April 15, 2008, the Missouri Court of Appeals for the Eastern District of

Missouri affirmed Petitioner's conviction without issuing a formal opinion.

Relying on Missouri law, the appellate court concluded that C.B.'s testimony was

properly admitted under the prior consistent statement exception to the hearsay

rules.   Quoting *State v. Ramsey*, 864 S.W. 2d 320, 329 (Mo. 1983), the court

reasoned that C.B.'s testimony was admissible "for the purpose of rehabilitating a witness ["the victim"] whose credibility has been attacked by an express or implied claim of recent fabrication of trial testimony."  In reaching its conclusion, the Missouri Court of Appeals reviewed the Missouri case law relating to the admission of prior consistent statements or requiring the exclusion of such statements as duplicative bolstering.  Noting that "'if the prior statement is relevant for purposes other than corroboration and duplication of trial testimony, it is not improper bolstering.'"  Exh. E at 3 (quoting *Ramsey*, 864 S.W. 2d at 329), the appellate court noted that on cross examination, defense counsel implied that the victim had not mentioned "attempted rape" to the police on the night of the incident and that six months after the incident, she had fabricated the attempted rape allegations in response to suggestive questioning by the circuit attorney.  The appellate court concluded that in light of this attack on S.M.'s credibility, C.B.'s testimony was properly admitted for the purpose of rehabilitating e S.M.'s credibility.  In light of the attack on the victim's credibility the court concluded that the statements admitted were neither duplicative nor unduly bolstering.

## III.  <u>State Post-Conviction Proceedings</u>

A. *The Rule 29.15 Motion*

In his *pro se* Rule 29.15 motion for state post-conviction relief Petitioner

asserted nineteen claims.    After the appointment of post-conviction counsel,

Petitioner filed an amended the Rule 29.15 motion and requested an evidentiary

hearing.   In the amended petition, post-conviction counsel asserted the following

grounds: (1) that trial counsel was ineffective for failing to seek a bill of particulars

to distinguish between the two second-degree domestic assault charges set forth in

Counts III and IV of the indictment; (2) that trial counsel was ineffective in failing to

impeach the victim with prior inconsistent statements regarding: a) whether

Petitioner's dog actually jumped on her, and b) delay in reporting the attempted

rape; (3) that trial counsel was ineffective for informing the trial judge that Petitioner

did not want to testify when Petitioner informed counsel, orally and in writing, that

he wanted to testify, thus depriving Petitioner of his rights under the Fifth, Sixth and

Fourteenth Amendments; (4) that trial counsel was ineffective for failing to inform

Petitioner of any plea offers extended by the prosecutor, and for failing to seek a

continuance or a plea agreement; (5) that trial counsel was ineffective for failing, in

opening statement and closing argument, to object to the prosecutor's references to

matters not in evidence; (6) that trial counsel was ineffective in failing to call as a

witness at trial in support of Petitioner's alibi, Carrie Skinner, an endorsed defense

witness; (7) that trial counsel was ineffective for failing investigate and call Larry

Raven as an alibi witness; (8) that appellate counsel was ineffective in failing to raise as error the trial court's acceptance of the jury verdict and imposition of sentence with respect to Count II, the kidnapping charge, because Petitioner's sentence for kidnapping constituted double jeopardy; (9) that appellate counsel was ineffective in failing to brief and argue a claim that there was insufficient evidence to support Petitioner's convictions; and (10) that the trial court lacked jurisdiction to sentence Petitioner as a prior and persistent offender, because those allegations were not proved by way of certified copies of court files prior to submission of the case to the jury.

The motion court granted the request for and held a limited evidentiary hearing at which Petitioner's trial counsel and others testified.   In addition, the motion court permitted Petitioner to submit deposition testimony.   The pertinent testimony from the hearing and deposition is set forth here.

At the post-conviction relief (PCR) hearing, Ms. Hermann, Petitioner's trial counsel, testified that prior to trial, Petitioner was adamant that he did not wish to plead guilty but insisted on going to trial.   Ms. Hermann further testified that there were no plea negotiations at any time prior to trial and that she had never obtained a plea offer from the State.   Petitioner withdrew this ground for relief at the hearing and it was dismissed.

Trial counsel also testified that, prior to trial she had discussed with Petitioner whether Petitioner should testify. Trial counsel advised Petitioner that it was not in his best interest to testify, but made it clear that it was Petitioner's decision to make. Trial counsel testified that Petitioner initially agreed with her advice to refrain from testifying but that there were points during trial when Petitioner indicated that he "might" want to testify. Trial counsel recalled that at various point s during the trial, particularly during the testimony of other witnesses, Petitioner passed notes to her in which Petitioner stated that he believed there was a "need" for him to testify. *See* Exh. F, at 18-24; Exh. G, at 106-08. Trial counsel recalled that one of the notes was written during S.M.'s testimony and that another of the notes was written after closing argument as the jury was leaving the courtroom to deliberate. *See* Exh. F, at 22-23, 24 & 41; Exh. G, at 107-108.

Trial counsel next testified that during the lunch recess which occurred after S.M.'s testimony, after the State had rested and after the trial court had initially asked Petitioner whether or not he wished to testify, she had the opportunity to talk further with Petitioner regarding the question of whether he should testify. *See* Exh. F, at 37-40. During this discussion, trial counsel again emphasized that although it was Petitioner's decision to make, she continued to believe that it was not in his interest to testify. *See id.* at 38. At the end of this discussion, Petitioner told

14

trial counsel that he did not want to testify. *See id.* at 39. According to trial counsel, when, after the lunch recess, the court inquired of her about Petitioner's decision, Petitioner was present and did not respond to her representation to the court that Petitioner was content with submitting the case as it stood. Exhibit F, at 39-40.

At the close of the PCR hearing, the record was kept open for the submission of Petitioner's deposition testimony. *See id*. at 46. In his first deposition, Petitioner claimed that he consistently told trial counsel that he wanted to testify – both before and during the trial. Exh. G, at 119-22. According to Petitioner, while S.M. was testifying he wrote the first and second notes, Hearing Exhs. A & B, to counsel indicating that he might need to testify. *Id.* at 122, 124, 146, 147. He testified that he wrote a third note to counsel as the jury was being seated after the after the lunch recess before the reading of instructions and closing arguments. *Id.* at 125-26, 148. Petitioner testified that in the third note he asked counsel asked if there was a way to tell the judge that he wanted to testify. *Id*. at 148. Petitioner claimed that he held this note up to get the bailiff's attention, but that the bailiff told him that it was his attorney's decision. *See id*. at 126. Petitioner also testified that he did not show the third note to trial counsel until after the bailiff approached him. *Id*. at127.

Petitioner further testified that wrote two additional notes not referenced in trial counsel's testimony. He testified that he wrote one of those notes, Hearing Exh. D, during S.M.'s testimony and that he wrote a fifth note, Hearing Exh. E, just prior to writing the third note, Hearing Exh. C. He further testified that that trial counsel's response to Hearing Exh. E had prompted him to write Hearing Exh. C and to attempt to get the bailiff's attention. *See id*. at 127-29, 149-150.

Petitioner also testified that, after the lunch recess, when trial counsel indicated to the court that they would submit the case without further testimony, he was in the process of writing down the questions that he wanted her to ask him when he testified. *Id.* at 129-31. Petitioner claimed that he failed to respond when trial counsel told the court that he would not testify because trial counsel had told him previously that he should not communicate directly with the judge but do so the through her. *See id*. at 134.

In his deposition Petitioner also testified to what he would have told the jury if he had been allowed to testify at trial. Specifically, he stated that S.M. had called him to pick her up on November 10, and that, when S.M. called him; she indicated that she wanted to spend the night with him. *Id.* at 133. Petitioner said that he told S.M. that because he was low on gas he would not be able to bring her back home until he left for work the following morning. *Id.* Petitioner alleged that he did not

actually pick S.M. up until after 10 p.m. *Id*. at 134. According to Petitioner, once they got to his home, S.M. went into his bedroom and they started to discuss issues about their relationship. *Id*. at 134-35. While they were talking, the radio was on and S.M. began to start dancing. *Id*. at 136. Petitioner alleged that, as she was dancing, S.M. started stripping. *Id*. When S.M. got tired of stripping, Petitioner started dancing for S.M. *Id*. at 136-37. According to Petitioner, while he was dancing, S.M. started taking pictures of him with a camera that was on his dresser, and then he took pictures of her. *Id*.at 137. After that, S.M. got dressed again and indicated that she needed to use the bathroom. *Id.* Apparently, to go to the bathroom, S.M. would either have had to go outside or go through the kitchen where Petitioner's mother was sitting. *Id*. Petitioner stated that S.M. did not want to go outside or encounter Petitioner's mother without Petitioner being present. *Id.* Petitioner was apparently unwilling to escort S.M. to the bathroom and S.M. told Petitioner that she wanted to go home. *Id.* at 137-38. Petitioner claimed that, after a discussion about whether S.M. could get gas money for Petitioner, he sat back down and started ignoring S.M. *Id.* at 138-39. Petitioner stated that there was nothing preventing S.M. from leaving on her own. *Id.* at 139-40. Petitioner indicated that, at some point, S.M. got mad at him for ignoring her and started to throw things at him. *Id*. at 143. Petitioner claimed that he made a decision not to

strike back at S.M. because S.M. knew that he had a pending assault case.  *Id*. at

143-44.  Finally, in a second deposition, Petitioner asserted that he would have

testified that S.M. could have left his home whenever she wanted to leave and that

S.M. never indicated that she was going to leave on her own if Petitioner did not

drive her home.  *Id.*

Petitioner also testified that he never tried to force S.M. to have sex with him

and that she had a reason to make up false charges because she might have been

pregnant.  *Id.* at 160-62, 163-65.  Petitioner stated that, in subsequent

conversations with S.M., she said that she was unwilling to withdraw the charges

against him for fear of being charged with filing a false report.  In addition, he

testified that at that time he threatened to tell the other men with whom S.M. had

relationships that he might have been the father of her child.  *Id.* at 164-65.

Regarding the assault charges, Petitioner claimed that he would have testified that he

did not choke S.M., but that when they were outside of his house he put her in a

headlock after she punched him, scratched his face, and ripped his shirt.  *Id*. at

165-66.

Larry Raven, the individual identified by Petitioner as a potential alibi

witness, also appeared at the PCR hearing.  He testified that at the time of the

incident in November of 2004 he was the boyfriend of Carrie Skinner, Petitioner's

mother, and was present in the home on the night of the incident although he had fallen asleep for a considerable period. Raven testified that although he saw the victim in Petitioner's room on the night of the incident, he paid little attention to her demeanor and saw nothing unusual. Raven could not recall if he was available to testify at the time of trial, and denied having been contacted by trial counsel. Trial counsel testified, however, that she contacted Raven prior to trial and that he told her at that time that he had no recollection of being at the home on the date of the offense and that he could offer no helpful testimony. Trial counsel also testified that at the time of the trial neither Raven nor Skinner would agree to provide an alibi for Petitioner. Instead, the two offered only corroboration of the victim's testimony that she and Petitioner were in Petitioner's bedroom on the night in question.

A. *The Motion Court's Opinion*

The Rule 29.15 motion made extensive factual findings with respect to Petitioner's decision to testify. Finding generally that trial counsel was credible and that Petitioner was not credible, the motion court determined that prior to trial counsel had advised Petitioner about his right to testify and that matter had been discussed both before and during trial between defense counsel and Petitioner. Exh. G at 190-92. The motion court found that prior to trial, Petitioner agreed with counsel's advice not to testify. During trial, he changed his mind, sought to testify,

19

and informed the court in a qualified way that he wished to testify. However, when the court next inquired, counsel, in Petitioner's presence, indicated that Petitioner did not wish to testify. Exh. A at 219-221. The motion court further found that Petitioner knew that court had been informed of this decision but did nothing prior to closing arguments, when he wrote a note to defense counsel stating, "I need to talk." The motion court found that this ambiguous remark could have been a request to testify, but that trial counsel did not interpret it in that manner.

The motion court further found that, during trial, Petitioner passed two notes to counsel which indicated that Petitioner might have changed his mind about testifying. Exh. G at 191. The motion court also found that, after the prosecution rested, the trial judge advised Petitioner, on the record, about his right to testify and explained that when they reconvened Petitioner needed to inform the court if he wanted to testify. *Id*. at 190. The motion court then found that, after discussing the matter with trial counsel during the lunch recess, Petitioner decided that he would not testify and that Petitioner was present and said nothing when trial counsel informed the court, at the end of the lunch recess before the jury was brought back in, that Petitioner did not wish to present any additional evidence. *Id*. at 190-91. Finally, the motion court found that the three remaining notes Petitioner wrote on the topic of testifying were either written in the middle of closing argument or after the

jury had begun its deliberation. *Id*. at 191.

In its analysis of this issue the motion court distinguished the present case from a Missouri case, ***State v. Edwards*, full cite supra**, in which the defendant made an unequivocal request to testify to the trial court prior to closing arguments. The motion court instead relied upon *State v. Whitfield*, 939 S.W.2d 361 (Mo. 1997), vacated in part on other grounds, 107 S.W.3d 253 (Mo. 2003), where during closing argument, the defendant made an ambiguous statement about speaking in his own behalf, "more in the nature of a disruption than an assertion of the right to testify." The defendant had remained silent when, in his presence, his counsel notified the trial court that he would not testify and the defendant was held to have waived his right to testify.

The motion court noted that "[a] defendant's right to testify is not unqualified," *Stewart*, 20 F.3d at 917, and that the defendant may not first indicate at trial his apparent acquiescence in his counsel's advice that he not testify, and then later claim that his will to testify was overcome by counsel. On the basis of its findings and analysis, the motion court concluded that Petitioner knowingly waived his right to testify and acquiesced in counsel's advice. The motion court further concluded that any belated attempt by Petitioner to change his mind during closing argument did not qualify as an assertion of the right to testify, and that trial counsel's

advice on this issue was competent.   *Id*. at 198-99.

The motion court also rejected as facially insufficient Petitioner's claims regarding trial counsel's failure to impeach the victim's testimony.   The court noted that defense counsel had impeached the victim on several points and the fact that the victim could have been impeached with other inconsistencies was insufficient to establish that defense counsel's performance was deficient.   The motion court further noted that the most crucial impeaching statement regarding the alleged delay in reporting the claimed sexual assault was placed squarely before the jury and that counsel's performance was well within prevailing professional norms.

In addition the motion court rejected the claim that defense counsel was ineffective for failing to object to certain statements made in the opening statement and closing argument.   The court opined that the alleged misstatements by the prosecutor either were not made or were in fact supported by the record and that there was no objection that defense counsel could have raised that would have been proper.

C. *Appeal from Denial of Post-Conviction Relief*

On appeal from the denial of post-conviction relief, Petitioner reasserted four of the ten claims he had raised in his amended motion, as well as on previously unasserted claim.   Specifically, Petitioner alleged (1) that the motion court erred in

denying his claims that trial counsel was ineffective for informing the court that Petitioner did not wish to testify; (2) that the motion court erred in denying his claims that trial counsel was ineffective for failing to impeach the victim with prior inconsistent statements; (3) that the motion court erred in denying his claims that trial counsel was ineffective for failing to object to statements made by the prosecutor in opening and closing arguments on the ground that they that were not supported by the evidence. Petitioner further alleged (4) that the motion court erred in denying his claim that appellate counsel was ineffective for failing to raise a sufficiency of the evidence argument on direct appeal ; and (5) prosecutorial misconduct.

On February 22, 2011, the Missouri Court of Appeals affirmed the denial of the post- conviction motion without issuing a formal opinion. *Russell v. Missouri*, No. ED 94012, (Mo. Ct App. Feb. 22, 2011). In the informational memorandum accompanying its order of affirmance, the appellate court found that in light of the conflicting testimony from Petitioner and trial counsel, the issue concerning the decision to testify involved a credibility determination and that the motion court acted within its authority in resolving that credibility issue against Petitioner. Exh. L, at 6-7. The Missouri Court of Appeals observed that if Petitioner wished to do so he had the right to testify during the time set aside for the presentation of his case to

the jury.   However, the court further held that the factual finding by the motion court that Petitioner had decided that he did not want to testify was supported by the evidence and therefore that Petitioner's claim lacked merit.   *See id*. at 6-8.

With respect to the second ground alleged the appellate court noted that trial counsel had cross examined S.M. regarding the alleged delay in reporting the incident.   *Id*. at 9.   Recognizing that the cross-examination did not specifically extend to inconsistencies in S.M.'s deposition testimony, the court nevertheless Appeals found no substantial inconsistency between the trial testimony and the deposition testimony and noted that the other evidence presented with respect to the delay in reporting corroborated S.M.'s trial testimony.   *See id.* at 10.

The appellate court also determined that, although trial counsel did not cross examine S.M. about the differences between her trial testimony and her deposition testimony regarding the incident with the dog, trial counsel's failure to do so did not constitute a failure to perform within prevailing professional norms.   Noting that both versions of the incident supported the charge of kidnapping and that there was other evidence tending to support S.M.'s trial testimony, the court concluded that the asserted inconsistencies regarding the dog were not material.   *See id*. at 9-10.

Finally, with respect to the second ground presented, the court recognized that on appeal Petitioner was raising new, unexplored areas of inconsistency in an effort

to show that the motion court had improperly characterized trial counsel's cross examination as "vigorous."   Nevertheless, the appellate court held that the new claims of inconsistency would not be considered because they had not been properly raised in the amended motion.   *See id.* at 10-11.   The court also opined that the issue before it was whether trial counsel had competently cross-examined S.M. and that it was not called upon to assess the vigor of the cross-examination.   *See id.* After framing the issue in this manner, the Missouri Court of Appeals concluded that Petitioner had not shown that the motion court had erred in finding that the cross examination was competent.   *See id.*

With respect to the third ground alleged the Missouri Court of Appeals noted that Petitioner made a general claim that counsel was ineffective in failing to object to the prosecutor's statements in opening and closing, on the ground that the statements improperly consolidated the charges of domestic assault with the attempted rape.   *See* Exh. I at 14.   In addition, in the argument section of his brief, Petitioner asserted that trial counsel erred in failing to object the prosecutor's statements in argument regarding injuries to S.M.'s neck and the tearing or ripping off her clothes.   Petitioner asserted that counsel should have objected to these statements because there was conflicting evidence with regard to the injuries and there was no evidence that S.M.'s clothes were ripped off.   *See id.* at 38-39

**IV. Exhaustion and Procedural Bar**

Pursuant to 28 U.S.C. § 2254, before pursuing a federal habeas corpus claim in a federal district court, a state prisoner must first exhaust state law remedies related to those claims. *See* 28 U.S.C. § 2254(b)(1)(A). A state prisoner has not exhausted his remedies unless he no longer "has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). In addition to the lack of a remaining state procedure, "exhaustion" requires a petitioner to have fairly presented the "substance" of each federal habeas ground to the state courts. *Anderson v. Harless*, 459 U.S. 4, 6, 103 S. Ct. 276, 277 (1982). To fairly present a claim the petitioner must have previously raised both the factual and legal basis for the claim with the state courts. *Flieger v. Delo*, 16 F.3d 878, 885 (1996); *see also King v. Kemna*, 266 F.3d 816, 821 (8th Cir. 2001). A claim is not fairly presented when "factual allegations with a significant impact on the merits of the claim" are raised for the first time in federal court. *Stranghoener v. Black*, 720 F.2d 1005, 1007-09 (8th Cir. 1983).

Furthermore, for a claim to be fairly presented and for state remedies to be properly exhausted, a petitioner must have raised the claim on direct appeal or in state post-conviction proceedings. *Davis v. Campbell*, 608 F.2d 317, 320-21 (8th Cir. 1979). Under Missouri law, claims not included in the amended motion for

post-conviction relief are not considered by the motion court and may not be raised on appeal from denial of that motion.   *Wills v. State*, 321 S.W.3d 375, 386-87 (Mo. Ct. App. 2010); *Norville v. State*, 83 S.W.3d 112, 114 (Mo. Ct. App. 2002); *Leach v. State*, 14 S.W.3d 668, 670-71 (Mo. Ct. App. 2000).

When a petitioner fails to properly exhaust state remedies on a claim and the time for doing so has expired, the claim is procedurally defaulted.   *See Welch v. Lund*, 616 F.3d 756, 758 (8th Cir. 2010); *Sweet v. Delo*, 125 F.3d 1144, 1149-50 (8th Cir.1997) (concluding that Petitioner's failure to present a claim on appeal from a state circuit court ruling raises a procedural bar to pursuing the claim in a habeas action in federal court).   The doctrine of procedural bar applies whether the default occurred at trial, on appeal, or during state court collateral attack.   *See Murray v. Carrier*, 477 U.S. 478, 490–92 (1986).

If a petitioner has procedurally defaulted a claim, habeas review is not permitted unless the petitioner can demonstrate "cause" sufficient to excuse the procedural default and prejudice arising from the default or a "manifest injustice," *i.e.*, newly discovered evidence of actual innocence.   *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Grass v. Reitz*, 643 F.3d 579, 584 (8th Cir. 2011); *Welch v. Lund*, 616 F.3d at 760; *King v. Kemna*, 266 F.3d 816, 821 (8th Cir. 2001).

**V**.   **Habeas Standard of Review**

Where a claim has been adjudicated on the merits in state court, the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254 *et seq.*, provides that a writ of habeas corpus cannot be granted unless the state court's adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.   U.S.C. § 2254(d).

The "contrary to" clause is satisfied if a state court has arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or confronting facts that are materially indistinguishable from a relevant Supreme Court precedent, reaches the opposite result.   *Strong v. Roper*, 737 F.3d 506, 510 (8th Cir. 2013*)*; *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003).   A "state-court decision is contrary to the clearly established precedents of the United States Supreme Court if it applies a rule that contradicts the governing law set forth in the Court's cases, or if it confronts a set of facts that is materially indistinguishable from a decision of the Court but reaches a different result."   *Brown v. Payton* 544 U.S. 133, 141, 125 S.Ct. 1432, 1439 (2005).   In addition, a state court "unreasonably applies" clearly established federal law when it "identifies the correct governing legal principle from [the

Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

Factual determinations made by a state court are presumed correct, 28 U.S.C. § 2254(e)(1), and will stand unless the Petitioner rebuts this presumption with clear and convincing contrary evidence. *Grass v. Reitz*, 749 F.3d 738, 743 (8th Cir. 2014). Similarly, a state court's credibility findings are afforded great deference. *See id.* at 744; *Smulls v. Roper*, 535 F.3d 853, 864 (8th Cir. 2008) (en banc).

A. *Ineffective Assistance of Counsel*

"Under the familiar standard of *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a defendant claiming ineffective assistance of counsel must show counsel' performance was deficient and the deficiency prejudiced the defendant." *Addai v. Schmalenberger*,776 F.3d 528,535 (8th Cir. 2015). "To prevail under *Strickland*, a defendant must first show that his attorney's performance was deficient." In "[c]onsidering an attorney's performance, [a reviewing court] 'must indulge a strong presumption' that the conduct was reasonable, and 'the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Paulson v. Newton Corr. Facil., Warden*, 773 F.3d 901, 904 (8th Cir. 2014) (quoting *Strickland*, 466 U.S. at 689 (internal quotation)). "In addition to showing that the

counsel was deficient, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. (quoting *Strickland*, 466 U.S. at 694). "Merely showing a conceivable effect is not enough; a reasonable probability is one sufficient to undermine confidence in the outcome." *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir.2011) (internal quotation marks omitted).

## VI. Ground One

Petitioner here asserts that trial counsel was ineffective and violated his constitutional rights by preventing him from testifying on his own behalf. In his amended post-conviction motion and on appeal from the denial of the amended motion raised a slightly, but not materially different, claim asserting that trial counsel was ineffective for informing the trial judge that Petitioner did not want to testify. Exh. G, at 66-72; Exh. I, at 12, 17-28. Inasmuch as Ground One was fairly presented to the state courts, the undersigned concludes that it is properly exhausted and subject to habeas review. *Davis*, 608 F.2d at 320-21; *see also Wills*, 321 S.W.3d at 386-87.

Proceeding to the merits of the claim under 28 U.S.C. Section 2254(d), the undersigned first notes that it must defer to the factual findings of the state court unless that decision was contrary to, or involved either an unreasonable application

of federal law as determined by the United States Supreme Court or an unreasonable determination of the pertinent facts. Upon consideration of his Petitioner's pleadings here and his arguments before the state courts, the undersigned concludes that Petitioner does not have a substantial argument with respect to Ground One that the trial court failed to follow established federal law or failed to reasonably apply it. In addition, the undersigned cannot conclude that state court's determination of the pertinent facts was unreasonable.

The issue here turns on whether trial counsel accurately conveyed Petitioner's decision as it stood at the time that she informed the court that he would not testify. Here the motion court found that at the time that trial counsel informed the judge that Petitioner did not wish to testify, she accurately conveyed Petitioner's decision. Petitioner has not demonstrated that the reviewing state court's factual findings with respect to this question were unreasonable or that the motion court's decision to accept trial counsel's testimony as credible was unreasonable. Although the state court could have found that Petitioner's version of the events relating to the decision to testify was credible, it was not unreasonable for the state court to reach the opposite conclusion.

In order for Ground One to succeed the undersigned would first have to conclude that the state courts' resolution of the factual issues relating to this question

was unreasonable, reject the motion court's findings and accept Petitioner's testimony as true.   Petitioner does not offer and the undersigned finds no reason to reject the motion court's determination that trial counsel was credible and Petitioner was not.

Moreover, even if Petitioner changed his mind and decided that he wished to testify, the undersigned could not conclude that he is entitled to habeas relief. Under the Confrontation Clause a criminal defendant has both a right to testify and a right not to testify, but that right does not remain open indefinitely and is subject to reasonable practical and procedural constraints related to the presentation of the case to the jury.   *See United States v. Blum*, 65 F.3d 1436, 1444 (8th Cir. 1995).   In light of these constraints, a defendant must exercise his right to testify by affirmative action at the appropriate time, otherwise a knowing and voluntary waiver of the right to testify is deemed to have occurred.   *Id*. (holding that defendant waived her right to testify where she chose not to testify, and then, after the close of evidence, sent a note to the court stating she had changed her mind); *see also United States v. Stewart*, 20 F.3d 911, 917 (8th Cir.1994) (affirming waiver where *pro se* defendant did not present evidence, but stated his desire to testify only after the trial court said it was ready to hear closing arguments and the trial court did not re- open the case); *El-Tabech v. Hopkins*, 997 F.2d 386, 388-89 (8th Cir.1993) (finding sufficient

evidence of waiver where trial counsel testified that the defendant decided not to testify and was silent through the jury instruction conference and discussion that defendant would not be testifying, even though defendant claimed that he raised his hand to testify during trial).

Where, as here, the trial judge has explained to defendant when he must communicate his decision with respect to testifying, a defendant does not have an absolute right to testify at any point in the proceedings.   A defendant may not interrupt the state's presentation of its case, or wait until the middle of closing argument to decide to testify.   In addition, a judge who has explained that right to a defendant in open court acts appropriately in accepting trial counsel's uncontradicted representation in open court that a defendant has decided not to testify.   In light of the forgoing precedents and the facts found by the motion court, there is no doubt on this record that Petitioner waived his right to testify.

The record also persuades the undersigned that defense counsel's advice to Petitioner to refrain from testifying fell within the wide range of reasonable professional assistance and is not subject to second- guessing here.   In fact given the likely detrimental effects of Petitioner's testimony to advise otherwise would have been a questionable defense strategy.

Petitioner had prior convictions for domestic assault and robbery.   If he had

testified, these convictions would, in all probability, have been revealed.   In

addition, in his deposition testimony Petitioner admitted to at least some assaultive

behavior towards the victim which also would have been revealed to the jury.

These considerations persuade the undersigned that defense counsel's advice not

only fell within the wide range of reasonable professional assistance but was

competent and sound.

For these reasons, the undersigned recommends that Ground One be denied.

## VII.  Ground Two

Petitioner also claims that trial counsel was ineffective for failing to object to

the prosecutor's statements in opening and closing argument that Petitioner ripped

or tore off the victim's clothes.   Petitioner contends that these statements misstated

or were unsupported by facts in evidence.   Petitioner also claims that trial counsel

was ineffective for failing to object to the prosecutor's assertion that not only the

attempted forcible rape but also the acts of domestic assault demonstrated forcible

compulsion.   Petitioner contends that this assertion improperly consolidated the

charge of attempted forcible rape with the charges of domestic assault.

In opening statement, the prosecutor informed the jury that it believed that the

evidence would show that petitioner "ripped" S.M.'s clothes and "yanked" her

clothes off.   Exh. A at 136-37.   There was no objection to this part of opening

statement.  *Id.*

On direct examination S.M. testified that Petitioner removed her clothes.  *Id.* at 151.   C.B. testified that S.M. told C.B. that S.M.'s underwear had been ripped. *Id.* at 204.   S.M. and C.B. both testified that S.M. sustained injury to her neck.  *Id.* at 181, 201, 207.   However, Officer Hayden testified that he did not notice any injuries to S.M.'s neck.  *Id.* at 190.

In closing argument, the prosecutor argued that Petitioner had ripped off S.M.'s clothes.  *Id*. at 222, 224.   The prosecutor also argued that Petitioner's choking of S.M. was one of the acts which showed an effort to forcibly compel S.M. *Id.* at 225, 226.   The prosecutor also argued that S.M.'s neck showed signs of injury.  *Id.* at 225, 227, 237-38.   Trial counsel did not object to any of these statements.  *Id.* at 222, 224-27, 237-38.

In the amended Rule 29.15 motion only trial counsel's failure to object to the statements regarding injuries to S.M.'s neck was presented.   The motion court held that any objection would have been futile because there was evidence from S.M.'s and C.B.'s testimony that S.M. neck had been injured.   Exh.G at 190, 194. Although Petitioner also raised the failure to object to other statements as a basis for relief on appeal from the denial of the Rule 29.15 motion, the Missouri Court of Appeals held that only the claim that trial counsel was ineffective for failing to

object to the statement in closing argument that S.M. had injuries on her neck was properly before the court. Exh. L at 12-13. The appellate court rejected the additional claims related to failure to object the prosecutor's statements that "consolidated" the rape and domestic assault charges as procedurally barred because they were not included in the amended motion. *Id.* at 12.

The appellate court held that because there was evidence supporting the statements regarding injury to S.M.'s neck there was nothing improper about the prosecutor argument and therefore that any objection would have been meritless. *Id.* at 13.

In the habeas petition presented to this Court, Petitioner alleges as a basis for relief the failure to object to two sets of statements: the portions of opening statement and closing argument dealing with the ripping of the victim's clothes and the portions of opening statement and closing argument that "consolidated" the rape and domestic assault charges.

The undersigned concludes that he second set of statement is procedurally barred. Petitioner offers no cause for his failure to properly present the consolidation claim in state court, asserting only that it was properly presented below. As noted above, under Missouri law, claims not included in the amended motion for post-conviction relief are not considered by the motion court and may not

be raised on appeal from denial of that motion.  *Wills*, 321 S.W.3d at 386-87.   In light of the failure to fully present the substance of this portion of Ground Two to the courts below or to show a basis for cause and prejudice, the undersigned will recommend that the ineffective assistance claim predicated on the failure to object to the prosecutor's statements that allegedly consolidated the charges of attempted forcible rape and domestic assault be dismissed as procedurally barred.  *Welch*, 616 F.3d at 758,760 (holding that a procedurally barred claim when a petitioner has not properly exhausted state remedies on a claim, he has procedurally defaulted that claim).

    Despite Petitioner's default with respect to a portion of the ground the undersigned will consider the merits of both portions of Ground Two. [4] Upon consideration of the merits of these claims the undersigned concludes that the record supports a determination that counsel was not ineffective with respect to either aspect of Ground Two.

_____

[4]    The original claim raised in state court regarding statements about the injury to Petitioner's neck is not explicitly raised here but applying the deferential standard of review, the undersigned is satisfied that decision of the state court was not unreasonable.   The prosecutor argued in closing argument that Petitioner injured S.M.'s neck and there was evidence showing that Petitioner did so.   Considering the fact that the prosecutor is authorized in closing argument to draw inferences from the evidence and to consider evidence in the light most favorable to the state's position, the undersigned cannot say that it was unreasonable of counsel to fail to object to this line of argument.   In fact it appears that there is no reasonable probability that such an objection would have been sustained.

With respect to the prosecutor's remarks regarding the tearing or ripping of the victim's clothes, the undersigned notes that at trial S.M. testified that Petitioner "snatched" her clothes off and C.B. testified that S.M. told C.B. that S.M.'s underwear had been ripped.   Exh A at 151, 204.   The undersigned cannot say that a fair and reasonable inference that Petitioner tore at and/or ripped the victim's clothes could not be drawn from that evidence.   Considering the fact that the prosecutor is authorized in closing argument to draw inferences from the evidence and to consider evidence in the light most favorable to the state's position, the undersigned cannot say that it was incompetent of counsel to fail to object to this line of argument. Counsel had no obligation to raise a frivolous objection that the argument was not supported by the evidence, and there is no probability, much less a reasonable probability, that such an objection would have been sustained.   Therefore, Petitioner's claim that the counsel was ineffective for failing to object and that he was prejudiced and thereby deprived of a fair trial is not supported by the record here.

As to the claim that the prosecutor's statements improperly consolidated offenses, the undersigned first notes that Missouri law permits a defendant to be charged with both attempted forcible rape and an assault charge relating to the act that constitutes the forcible compulsion element of the rape charge.   Therefore, the

prosecutor's statement properly drew from the evidence the reasonable inferences that (1) Petitioner was attempting to, or did in fact, injure S.M. by choking her, and (2) did so to overcome her resistance to Petitioner's sexual advances.   There is no reasonable probability that objection to this argument as either beyond the scope of the evidence, or contrary to the requirements of Missouri law would have been sustained.   Therefore, Petitioner's assertion that the failure to object to the aforementioned statements constitutes ineffective assistance of counsel is without merit.

For these reasons, the undersigned recommends that both claims set forth in Ground Two should be denied.   I

## VIII. Ground Three

Petitioner claims that trial counsel was ineffective for failing to impeach S.M.'s trial testimony by highlighting the contradictions between that testimony, her statements to the police and her deposition testimony.   In particular, Petitioner points to contradictions between S.M.'s trial testimony and her earlier statements and testimony regarding: (1) how and when Petitioner choked her, (2) how Petitioner took her clothes and when he did so in relation to the time of the attempted rape, and (3) whether S.M. believed that she would be arrested if she did not testify.

In his amended post-conviction motion, Petitioner claimed that trial counsel

was ineffective for failing to cross-examine S.M. about two inconsistencies: (1) S.M.'s trial testimony that Petitioner let his dog jump on her and that she felt the dog "real close" to her and her deposition testimony that the dog did not touch her because the chain on the leash was not long enough, and (2) S.M.'s trial testimony that the she mentioned the attempted rape before her meeting with the prosecutor and her deposition testimony that the prosecutor was unaware of the rape until S.M. mentioned it. *See* Exh. G. at 62-66. The motion court held that trial counsel "vigorously" cross-examined S.M. on several inconsistencies and that trial counsel's decision to cross-examine S.M. with respect some inconsistencies but not on others, did not demonstrate that trial counsel failed to perform according to prevailing professional norms. *See id.* at 189, 194.

In his appeal from the denial of the post-conviction motion, Petitioner alleged that trial counsel was ineffective for failing to impeach S.M. with prior inconsistent statements, but did not note any specific statements that should have been used in the cross-examination of S.M. *See* Exh. I at 13. In the argument section of his brief on appeal from the denial of the post-conviction motion, Petitioner asserted, in addition to the above-noted inconsistencies, the failures to impeach S.M. with her prior statements about: (1) whether there was a single, continuous assault or multiple acts of assault, (2) how she was held during the assault, (3) where she found her clothes

40

after the attempted rape, (4) when her clothes were removed relative to the time of the attempted rape, (5) her relationship with Petitioner at the time of the rape, (6) the time at which Petitioner picked her up, (7) the length of time that she was choked, and (8) whether she believed that she would be arrested if she did not testify. *See id*. at 30-36.

The Missouri Court of Appeals found that only the claims related to the failure to cross-examine S.M. about whether the dog jumped on her and when she reported the rape were properly raised in the amended motion. The Missouri Court of Appeals further concluded that all other claims of ineffective assistance of counsel arising from failure to impeach S.M. were procedurally barred because they had not been included in the amended motion. *See id.*

In the instant petition, Petitioner does raise the ineffective assistance claims related to either the failure to impeach S.M. about the dog jumping on her or the when she first reported the rape-the only claims that were exhausted in state court. The claims raised here are those that were raised for the first time on appeal from the denial of the amended post-conviction motion. Therefore, the undersigned concludes that the claims raised here have not been exhausted in accordance with Missouri law and are procedurally barred. Because Petitioner fails to allege cause for the failure to raise these claims in the amended post-conviction motion, Ground

Three should be dismissed.

Despite the procedural bar, the undersigned nonetheless considers the merits of Ground Three below.

The undersigned's review of the transcript reveals that on cross-examination, S.M. stated that the inconsistencies between her statement in the police report and her trial testimony arose from either the brevity and lack of detail in her statement to the police or the failure of the police report to reflect what she recalled telling the investigating officer. Exh. A, at 175-77. On cross-examination Officer Hayden challenged a least a portion of this explanation, asserting that S.M. had not provided him with the information at issue. *See id*. at 190-95. This cross-examination highlighted the inconsistencies between S.M.'s s testimony and the statements in the police report and was sufficient to emphasize to the jury the fact that Hayden recalled that S.M. had only provided him with information supporting a single count of domestic assault and, perhaps, kidnapping.

Although trial counsel could have explored additional inconsistencies, the undersigned cannot conclude that the cross-examination conducted here was inadequate or fell below reasonable standards of professional conduct. Sound trial strategy requires counsel to balance the benefit of exploring an area of inconsistency against the possibility that in doing so she will confuse with ultimately immaterial

42

inconsistencies.  Therefore, the undersigned cannot conclude that the failure to impeach S.M. regarding the number of times or how long Petitioner choked her or when and how he took her clothes from her constitutes ineffective assistance of counsel.

In addition, Petitioner asserts that trial counsel also should have explored the issue of whether S.M.'s deposition testimony showed a potential for bias based upon S.M.'s fear of being arrested if she did not appear and testify.  A review of the deposition reveals, however, that that no one had told S.M. that she might be arrested or experience other negative effects if she changed her story or recanted.  *See* Exh. J at 29.  Thus the record does not support a conclusion that impeachment was an advisable or reasonable trial strategy here.  At most the deposition testimony reveals a somewhat reluctant witness not motivated by a desire for retribution or revenge but aware that the subpoena required her to appear and to tell the truth.  *See id*.

Moreover, considerations of effective trial strategy could well have persuaded counsel to refrain from cross-examining S.M. on this point.  Attempting to impeach S.M. on such a weak point might have bolstered rather than detracted from her credibility.  Given the availability of other and more effective avenues of cross-examination the undersigned cannot say that trial counsel's decision to avoid

these pit falls was unreasonable and is satisfied that it reflects sound trial strategy.

For these reasons the undersigned concludes that Ground Three should be denied.

### IX.    Conclusion

On the basis of the forgoing, the undersigned concludes that Petitioner's request for federal habeas relief be denied.   Furthermore, the undersigned does not believe that reasonable jurists could find this assessment of Petitioner's claims for habeas relief debatable or wrong, for purposes of issuing a Certificate of Appealability under 28 U.S.C. §2254(d)(2).   *See Miller-El v. Cockrell*, 123 S. Ct. 1029, 1040 (2003) (standard for issuing a Certificate of Appealability) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Dennis Russell for a writ of habeas corpus pursuant to 28 U.S.C. §.2254 be DENIED.   (ECF No. 1.)

**IT IS FURTHER ORDERED** that a Certificate of Appealability should not be issued in this case.   The parties are advised that they have fourteen (14) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. ' 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions

44

of fact.  *See Thompson v. Nix*, 897 F.2d 356, 357-358 (8th Cir. 1990).

A separate judgment shall accompany this Memorandum and Order.


/s/ *Terry I. Adelman*
UNITED STATES MAGISTRATE JUDGE


Dated this 15th day of April, 2015.